# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ABG EPE IP, LLC,** | |
| *Plaintiff,* | |
| v. | Case No.: 1:24-cv-3977-SEG |
| **01baiyun, *et al.,*** | |
| *Defendants.* | |

## PRELIMINARY INJUNCTION

## INTRODUCTION

This case is before the Court following a hearing on Plaintiff's Motion for Preliminary Injunction. The Court previously entered a Temporary Restraining Order and Asset Freeze Order against all Defendants on October 9, 2024. The Court also authorized Plaintiff to serve Defendants by electronic means. In conjunction with the TRO, the Court ordered Defendants to appear at a hearing on October 22, 2024, to demonstrate good cause why a preliminary injunction should not issue. Due to a delay in receiving Defendant contact information from the platforms, the preliminary injunction hearing was rescheduled to November 5, 2024. The preliminary injunction hearing was held on November 5, 2024, at 9:00 AM ET.

Except for Defendants "coinsboy," "Retro Vintage Istanbul Shop," and "UnikMart," no Defendant appeared at the hearing. Based on the representations made during the hearing, Plaintiff intends to dismiss Retro Vintage Istanbul Shop and has settled the case with Defendant UnikMart. The parties anticipate that these Defendants will will be dismissed in due course. The Court reserves ruling on the instant motion as it pertains to Defendant "coinsboy" and DIRECTS Plaintiff to contact this Defendant **within 7 days of the entry date of this order** to address the dispute and try to reach a resolution.

All remaining Defendants, each of which failed to appear at the hearing or otherwise contest the preliminary injunction sought by Plaintiff, have failed to show good cause why a preliminary injunction should not issue. Therefore, Plaintiff's request for a preliminary injunction is **GRANTED** as to all Defendants shown on Exhibit A. The Court **ENTERS** a preliminary injunction on the findings of fact and conclusions of law set forth below.

## I.    APPLICABLE LEGAL STANDARDS

A court will issue a preliminary injunction where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam); *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, 2018 WL 566510 at *4 (N.D. Ga. 2018) (applying four-part test and granting preliminary injunction in a Lanham Act case).

A request for permanent injunctive relief and disgorgement of the defendant's profits from counterfeiting pursuant to 15 U.S.C. § 1117 are requests for relief in equity. Requests for equitable relief invoke the court's inherent equitable powers to order preliminary injunctive relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi*

*Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995). Such asset freezes are particularly appropriate against sellers of counterfeit goods who are likely to hide their ill-gotten profits if their assets are not seized. *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court, having reviewed the Plaintiff's Motion for TRO, Memorandum, and supporting declarations and evidence, makes the following findings of facts and conclusions of law:

### A.     Plaintiff's Trademarks

1)     Plaintiff owns all intellectual property, including all trademark rights, of Elvis Presley's estate and is the current owner of the global trademark portfolio of the late Elvis Presley. Plaintiff owns numerous federal trademark registrations and common law rights for its trademarks, including ELVIS, ELVIS PRESLEY, TAKING CARE OF BUSINESS, TCB, THE KING, KING OF ROCK N ROLL, JAILHOUSE ROCK, VIVA LAS VEGAS, LOVE ME TENDER, and many others (collectively, "Plaintiff's Marks").

2)     Plaintiff owns numerous federal trademark registrations for Plaintiff's Marks, including, but not limited to, the following:

| Mark | U.S. Federal Reg. Nos. |
|------|------------------------|
| ALL SHOOK UP | 3718615 |

| | |
|---|---|
| ELV1S | 2808601 |
| ELVIS | 3386025 |
| ELVIS | 3554763 |
| ELVIS | 1265579 |
| ELVIS PRESLEY | 1342551 |
| ELVIS PRESLEY | 1674265 |
| JAILHOUSE ROCK | 3821600 |
| KING OF ROCK N ROLL | 2158251 |
| LOVE ME TENDER | 3747631 |
| TAKING CARE OF BUSINESS | 3040319 |
| TCB | 3871907 |
| THE KING | 4641410 |
| VIVA LAS VEGAS | 3583778 |

**B.     Defendants' Advertising and Sale of Counterfeit and Infringing Goods.**

3)     Each Defendant is believed to be a non-U.S. entity, association, or individual, located in China or elsewhere in Asia, each of whom sells, offers for sale, distributes, and/or advertises goods through its virtual storefronts on various e-commerce marketplaces, such as Alibaba, AliExpress, Amazon, DHGate, eBay, Joom, Printerval, Walmart, and Wish (each a "Marketplace" and collectively the "Marketplaces").

4)     Each Defendant uses in commerce a reproduction, counterfeit, copy, or colorable imitation of one or more of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of goods on their respective virtual storefronts on the Marketplaces ("Counterfeit Products").

5

5)     Each Defendant has offered Counterfeit Products for sale throughout the United States, including in Georgia. Each Defendant is willing to engage in commercial transactions with residents of the United States and ship Counterfeit Products to the United States.

6)     Each Defendant also accepts payment for its goods in U.S. dollars through, for example, a variety of payment processors, banks, escrow services, money transmitters, the Marketplaces themselves, and other companies that engage in the processing or transfer of money of or on behalf of Defendants by virtue of their operation of virtual storefronts on any of the Marketplaces (collectively referred to hereafter as, "Financial Institutions").

7)     Defendants are subject to the personal jurisdiction of this Court pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure, and exercising jurisdiction over Defendants is consistent with the United States Constitution and its laws. Based on the facts set forth above, it is reasonable for Defendants to expect that they may be sued in the United States. *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542-47 (11th Cir. 1997) (holding court had personal jurisdiction over foreign corporation where defendant placed ads for securities in two airlines' in-flight magazines, mailed offering materials directly to U.S. investors, and maintained U.S. bank accounts to receive payment from investors.); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355-58

(11th Cir. 2013) (affirming jurisdiction over non-resident who sold counterfeit products through fully-interactive website).

8)    Plaintiff has never authorized any of the Defendants to use any of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of any goods in the United States.

9)    Plaintiff has established that the Counterfeit Products offered for sale by Defendants are not genuine and that each Defendant is using one or more of Plaintiff's Marks or a colorable imitation of Plaintiff's Marks on or in connection with the sale, offer for sale, distribution, or advertising of Counterfeit Products.

10)    Plaintiff has established that it is substantially likely to succeed on the merits of its trademark infringement claims:

    a)    Plaintiff owns valid federal trademark registrations for Plaintiff's Marks;

    b)    The Counterfeit Products that Defendants are advertising and offering for sale are not genuine;

    c)    Defendants are using spurious marks that are identical with, or substantially indistinguishable from, one or more of Plaintiff's Marks or colorable imitations of Plaintiff's Marks in commerce on or in connection with the sale, offer for sale, distribution, and/or advertising of the Counterfeit Products;

d)    Defendants' use of Plaintiff's Marks or colorable imitations of Plaintiff's Marks is likely to cause consumer confusion, mistake, or deception as to the source or origin of the Counterfeit Products;

e)    Alternatively and/or additionally, each Defendant is using in commerce a word, term, name, symbol, or device, or a combination thereof, or a false or misleading representation of fact on or in connection with its goods in a manner that is likely to cause confusion, or to cause mistake, or to deceive, as to the affiliation, connection, or association of each Defendant with Plaintiff, or as to the origin, sponsorship, or approval of each Defendant's goods or commercial activities by Plaintiff.

11)    Under 15 U.S.C. § 1116(a), Plaintiff is entitled to a rebuttable presumption of irreparable harm because Plaintiff is seeking a preliminary injunction and has demonstrated a likelihood of success on the merits. As held in the preceding paragraph, Plaintiff has demonstrated a likelihood of success on the merits and is, therefore, automatically entitled to a presumption of irreparable harm, thereby satisfying the second factor of the preliminary injunction analysis.

12)    Even in the absence of the rebuttable presumption, Plaintiff has shown that it is likely to suffer irreparable harm if an injunction does not issue. The proliferation of counterfeit and/or infringing copies of Plaintiff's goods

erodes the distinctiveness of Plaintiff's Marks and diminishes their value and associated goodwill. Because Plaintiff cannot control the quality of counterfeit and infringing goods, the sale of inferior counterfeit or infringing goods by Defendants will have a materially adverse effect on Plaintiff's business reputation and the goodwill associated with Plaintiff's Marks. This is sufficient to establish a likelihood of irreparable harm. *Noorani Trading Inc. v. Bijani*, 2017 WL 8292437 at *9 (N.D. Ga. May 4, 2017). The widespread and unauthorized use of Plaintiff's Marks in the marketing, offering for sale, and sale of counterfeit and/or infringing goods threatens the extensive goodwill associated with Plaintiff's business and Plaintiff's Marks, and will continue to negatively affect the sale of Plaintiff's genuine goods. There is a significant threat that Plaintiff will suffer irreparable harm without an injunction. *Mud Pie, LLC v. Deck the Halls, Y'all, LLC*, No. 17-2789, 2017 WL 8942387 at *3 (N.D. Ga. 2017); *Ferrellgas Partners, L.P*, 143 Fed. Appx. 180, 190 (11th Cir. 2005); *Crossfit, Inc. v. Quinnie*, 232 F. Supp.3d 1295, 1316 (N.D. Ga. 2017) ("The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods.").

13)    It is likely that Plaintiff will suffer immediate and irreparable loss, damage, or injury unless Plaintiff's request for preliminary relief is granted:

a)    It is likely that Defendants will continue to sell counterfeit and infringing goods through their virtual storefronts on the Marketplaces in the absence of the requested injunction;

b)    As a result, it is likely that consumers will continue to be misled, confused, and disappointed by the quality of these goods, thereby significantly and irreparably damaging Plaintiff's valuable goodwill; and

c)    Plaintiff will continue to suffer lost sales of genuine goods as the result of the Counterfeit Products offered for sale by Defendants.

14)    The balance of harms favors Plaintiff. If the motion for a preliminary injunction is denied, Plaintiff will continue to suffer the above-mentioned irreparable harm to its reputation and the goodwill associated with Plaintiff's Marks. On the other hand, enjoining Defendants from selling counterfeit and/or infringing goods poses little to no risk of damaging the goodwill, if any, associated with the Defendants. Any harm Defendants may suffer is purely monetary and is therefore compensable, unlike the harm that Plaintiff will continue to suffer.

15)    Granting Plaintiff a preliminary injunction is also in the public's interest. It will prevent consumer confusion in the marketplace and remove from the stream of commerce Counterfeit Products of unknown and likely

inferior quality and composition, thereby preventing consumer harm, confusion, mistake, and deception.

16)    Plaintiff has requested a permanent injunction and recovery of Defendants' ill-gotten profits from their sale of Counterfeit Products pursuant to 15 U.S.C. § 1117(a).

17)    By requesting equitable relief, Plaintiff has invoked this Court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief. *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Fed. Trade Comm'n v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

18)    Defendants are likely to destroy evidence of their counterfeiting activities, such as evidence regarding their virtual storefronts and payment processing histories on the Marketplaces and other Financial Institutions, as well as hide and/or transfer any ill-gotten proceeds from the sale of Counterfeit Products, unless those assets are frozen or otherwise restrained.

19)    All Defendants were previously served with process, the TRO, and notice of the Court's hearing set for November 5, 2024 and were further advised that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d), Rule 65

of the Federal Rules of Civil Procedure, 28 U.S.C. § 1651(a), and the Court's inherent authority.

20)    No Defendant listed on Exhibit A hereto appeared at the preliminary injunction hearing.

## PRELIMINARY INJUNCTION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion for a preliminary injunction is **GRANTED** as follows:

1)    Each Defendant (as reflected on the attached Exhibit A), its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order is hereby ordered to temporarily:

        a)    Cease and refrain from manufacturing, advertising, offering for sale, selling, distributing, destroying, selling off, transferring, or otherwise disposing of any Counterfeit Products;

        b)    Cease and refrain from manufacturing, advertising, offering to sell, selling, reproducing, or distributing any goods bearing Plaintiff's Marks, or any confusingly similar trademarks, other than genuine products manufactured or distributed by Plaintiff or its authorized manufacturers and distributors;

        c)    Cease and refrain from destroying, selling off, transferring, or otherwise disposing of any documents, electronically stored

information, or financial records or assets of any kind relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any Counterfeit Products;

d)     Cease and refrain from using Plaintiff's Marks, or any confusingly similar trademarks, on or in connection with any virtual storefront that any Defendant may own, operate, or control on any Marketplace;

e)     Cease and refrain from any and all use of Plaintiff's Marks, or any confusingly similar trademarks, as metatags, on any webpage (including the title of any web page), in any advertising links to other websites, from search engines' databases or cache memory, or any other form of use of such terms that are visible to a computer user or serves to direct computer searches to virtual storefronts registered, owned or operated by any Defendant on any Marketplace; and

f)     Cease and refrain from altering, disabling, closing, or transferring ownership of any virtual storefront on any Marketplace during the pendency of this Action, or until further Order of the Court.

2)     For the duration of this suit, each Defendant must preserve all documents and electronically stored information arising from or related to its

sale, offer for sale, distribution, and advertising of Counterfeit Products through its virtual storefronts located on the Marketplaces.

3)    All Financial Institutions previously served with the TRO shall continue to attach and freeze all funds in any accounts owned, controlled or utilized by or associated with Defendants and otherwise prohibit the transfer of any funds out of any such accounts and divert any frozen funds and any additional funds that may be transferred into the accounts into a holding account at the Marketplaces or the respective Financial Institution for the trust of the Court, with such frozen funds and/or holding accounts being held, maintained, and/or located exclusively within the United States.

4)    No funds restrained by the prior TRO shall be transferred or surrendered by any Financial Institution or Marketplaces for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of the Court.

5)    The Marketplaces previously served with the TRO (as well as any other e-commerce platform hosting virtual storefronts for any Defendant) on which a Defendant maintains a virtual storefront or account are ordered to continue disabling each Defendant's listing(s) for Counterfeit Products on the Marketplaces and any accounts associated with each Defendant.

6)    Plaintiff may notify the Marketplaces and Financial Institutions of this Order by electronic means, including by electronic mail.

7)     Pursuant to this Court's discretion, Plaintiff shall not presently be required to post a bond or other security. *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). However, any Defendant may appear and challenge this portion of the Order by providing the Court with a reasonable estimation of its potential lost sales, along with supporting documentation sufficient to allow the Court to decide what an appropriate amount of surety would be. Plaintiff will then have one (1) week in which to file a response.

8)     This Order shall remain in effect for the remainder of the litigation or until such further date as set by the Court or stipulated to by the parties.

9)     This Order shall apply to Defendants, their associated virtual storefronts on the Marketplaces, and any other websites, domain names, seller identification names, e-commerce stores, or Financial Institution accounts which are being used by Defendants for the purpose of advertising, offering for sale, and selling any Counterfeit Products at issue in this action and/or unfairly competing with Plaintiff.

10)    Any Defendant or Financial Institution account holder may petition the Court to modify the preliminary injunction and asset restraint set out in this Order.

11)    The Court's previous Temporary Restraining Order, Asset Freeze Order, and Order to Show Cause is **dissolved and is replaced by this Preliminary Injunction Order which is hereafter in effect.**

**SO ORDERED** this 12th day of November, 2024.

SARAH E. GERAGHTY
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**
**LIST OF ALL NAMED DEFENDANTS SUBJECT TO ORDER**

| |
|---|
| 01baiyun |
| 1GiftShopForYou |
| 3D wuyonq |
| 3XUdesign |
| 6D Bedding Duvet Cover |
| 13Bedding Duvet Cover |
| 14catstore |
| 16Bedding Duvet Cover |
| AbbySports |
| action f t |
| activedonewow |
| ADTheCanvasArt |
| AJMElvisCostumes |
| AkaShipuCanvas |
| akasiaCaseCraft |
| ALCO Toys Store JD |
| Alyaswallart |
| andexun2024 |
| apartbig |
| arieser |
| ArtsBer |
| ARtYAwalldecor |
| AsgarHomeDesign |
| AtelierQueenbee |
| AtlantisWallArt |
| Avantgarde3dStudio |
| BaHauStore |
| bed sheet and comforter set 1 |
| bed sheet and comforter set 2 |
| beddings wd |
| BestPosterEver |
| better.cos |
| BlueCanvasArtStore |
| BusseCanvasArt |
| BusyBroadJP |
| canvasboutiquework |
| CanvasShopCreative |

| |
|---|
| CarpetDecorHome |
| Cartoon aggregate |
| cenqinghu-shop |
| chaoziclothes |
| chaoziji_0 |
| chentengshangmao1 |
| Chuangle Product Creation Factory |
| Cocosopra's Boutique |
| CommaCanvasArt |
| CrocBoutiquee |
| CuteCanvasArtByMary |
| DarkFlamingoDesign |
| Dongguan Smart Gifts Co., Ltd. |
| Dongguan Sunshine Tin Box Co.,LTD. |
| Dongguan Yuchen Fashion Co., Ltd. |
| dongguanjotintec0 |
| Dongyang Baiyun Anxin Wig Factory |
| easytransferservice_0 |
| emintextile |
| EmyKi |
| esaArtDesign |
| ExtensiveArts |
| ezhoushixiangshiyangbaihuoshanghang |
| F15650-6 |
| feizixiao8891 |
| FENGZEQUBINGOBIANLIDIAN |
| FineArtModernShop |
| fotokart |
| Fulei35's Shop |
| Funko Fans |
| fuqingshihongrongmaoyishanghang |
| fuqingxingyangmaoyiyouxiangongsi |
| Fuzhou Jinhao Cracts Co., Ltd. |
| GiftyFramesDesign |
| girl_boy20238 |
| GloriumArt |
| GO666 |
| gokcecollection |
| goodto-29 |
| GoodviewVintageShop |

| |
|---|
| GreatSouvenirsShop |
| greeneight |
| guang zhou long wen shang mao dian ge ren du zi |
| gunri8747 |
| HadiMetalWallArt |
| Hangzhou Chuanggao Craft Co., Ltd. |
| happyecologyh_0 |
| hefeimodibaihuoshanghang |
| HH-ART-PAINTING |
| honorhardwarewa0 |
| Hunan Hyf Merchandise Co., Ltd. |
| HyperconDesigns |
| jackychenart |
| jakele |
| jazzguitars567 |
| JianDeShiXinAnJiangJieDaoYunYanMeiJiaDian |
| jinlan_73 |
| js_brick |
| JW Art Print |
| KING INTERNATIONAL |
| krhavlu0 |
| LailaCanvasShop |
| LeilaDesignFabric |
| LekArtDecor |
| LeliaCase |
| Li-Planet |
| LiveWallArts |
| Lkb115VintageShop |
| LovelyTee Store |
| Luoyang Prow Trading Co., Ltd. |
| Ly Khanh Do |
| Ly Thi Cam Nguyen |
| madebysrk |
| MagicalScissBoutique |
| maxvintageshop |
| maydevise2023 |
| MC_melody |
| mecmarc |
| MrMrsShopDesign |
| mystore1-2-3 |

| |
|---|
| narendr bareth |
| NesliArts |
| NewWallDecor |
| nguyen danh le |
| Nhagal |
| NhanNhan 2023 |
| NHUNG TUYET THI DUONG |
| OgeyWallArt |
| oguztolga |
| oliber2 |
| OzCanvas |
| OZLEM ATESLI BILDIRICI |
| pacome-72 |
| PassionWallArts |
| PENCHON |
| phuong thi minh nong |
| Play Collectibles |
| PuntArtStore |
| PuTianShiChengXiangQuWangHanLingMaoYiYouXianGongSi |
| putianshilichengqurongchunyanmaoyiyouxiangongsi |
| putianshilichengyanjianxiangshangmaoyouxiangongsi |
| PWallArts |
| Quanzhou Shandian Electronic Commerce Co., Ltd. |
| Quanzhou Simba Supply Chain Co., Ltd. |
| Quzhou Nishaer E-Commerce Co., Ltd. |
| Rareak |
| Ravezza |
| rayspchongkong |
| Redstoneer |
| RitmoArt |
| RuAtika |
| Rubywallart |
| SargasCanvasArt |
| SeventyCanvasStudios |
| Shanxi Jakcom Technology Co., Ltd. |
| shen zhen shi jin gang ke ji you xian gong si |
| Shenzhen Pinyu Technology Co., Ltd. |
| Shenzhen Shenman Technology Co., Ltd. |
| Shenzhen Zhong Yi Paper Products Co., Ltd. |
| shoppivistore |

| |
|---|
| SilverHomeArts |
| siupo23 |
| siwarel |
| skywallartdesign |
| SocietyCanvas |
| Sunmelody |
| Super Broadway_Rikilo |
| SUPERB COLLECTION INCORPORATION |
| Suzhou Chuan Zai Gu Clothing Co., Ltd. |
| sweethome6 |
| tilleyart |
| Tomoko  Takemoto |
| TSHIRTGB |
| Tung Xuan Cao |
| uk-retailer |
| uk89-kky |
| vanke3-4 |
| VoixeCanvss |
| volta03 |
| Wahaj Shahzad |
| WawaMame |
| Weihai Glodenleaveshair Products Co., Ltd. |
| wodenna2023 |
| xichubawang |
| YeahUvintage |
| Yiwu Cora Trade Co., Ltd. |
| Yiwu Fenghao Clothing Co., Ltd |
| Yiwu Genmei Wig Co., Ltd. |
| Yiwu Gongming Trading Co., Ltd. |
| Yiwu Happy Party Crafts Factory |
| Yiwu Hongliang Crafts Co., Ltd. |
| Yiwu Minco Import And Export Co., Ltd. |
| Yiwu Qianying Jewelry Co., Ltd. |
| Yiwu Rynel Garment Co., Ltd. |
| Yiwu Tingdu Electronic Commerce Co., Ltd. |
| Yiwu Yushang Cosmetics Co., Ltd. |
| Yiwu Zhaobao Trading Co., Ltd. |
| ZHCollection |
| zhengzhoushizhongyuanqumingrenbaihuoshanghang |
| Zhongshan Ho Crafts And Gifts Co., Limited |

| |
|---|
| zhouwenwang |
| zhuqiu |
| zihnimuzik |
| zk2026 |